Ex PARTE CHAS. C. CRENSHAW.

No. 8520.   Decided March 5, 1924.

1.—Habeas Corpus—Contempt—Attorney and Client—Trial Judge.

An attorney engaged in the trial of a case, when on his feet making objection in tone, manner, and word respectful, cannot be legally ordered by the court to take his seat and, for refusal, be adjudged in contempt.

2.—Same—Duties of Attorney—Bill of Exception—Waiver.

It is well settled that in order to bring any proceeding in the trial court before the appellate court for review, there must be an exception, and when this is aimed at some act or remark of the court during the reception of evidence, the fact of objection must be then made known to the court and preserved by a bill of exceptions, else it would, in most cases, be held waived.

3.—Same—Attorney and Client—Addressing Court.

We cannot quite see how relator could protect the interest of his client in a proper manner, or attempt to do so, though his complaint be not well founded, without rising and in respectful manner, tone, and language, making known the fact to the court of his objection and the grounds thereof, and when this is done it calls for a ruling of the court.

4.—Same—Attorney and Client—Practice in Trial Court.

If in connection with said ruling there be words or acts on the part of the trial court which to the mind of counsel for the defense appear capable of injury to the rights of the client he has the same right to again rise, address the court and state his objections and the grounds thereof.

5.—Same—Attorney and Client—Practice in Trial Court.

Whether relator was right or wrong in his conclusion as to the effect of the remark of the court below would not in any way affect his right to

object to the remark for reasons respectfully then stated for the purpose of his bill of exceptions, and such bill might then be taken if counsel so desire, and he would not be in contempt of court, and in the instant case relator is discharged.

From Hill County.

Original habeas corpus proceedings asking release from arrest for contempt of court as a practicing attorney in said court in the defense of his client.

The opinion states the case.

*Wear, Wood & Wear,* for relator.—On question of relator's right as practicing attorney in trial court; and on question of contempt: Ex Parte Degener, 17 S. W. Rep., 1111; Ex Parte Snodgrass, 65 id., 1061; Ex Parte Heidingsfelder, 206 id., 351; Ex Parte Miller, 244 id., 612; Ex Parte Duncan, 62 id., 758; Ex Parte Kearby, 34 id., 635; Huggins v. Fields, 244 id., 903; Adams v. Gardner, 195 id., 412, and cases cited in opinion.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, for the State.

LATTIMORE, JUDGE.—This is a direct application to this court for relief by habeas corpus from restraint under an order of the Honorable District Court of Hill County adjudging relator in contempt. That our conclusion may be understood we state the pertinent facts.

A criminal trial was in progress. It had been once before tried, a conviction had, followed by appeal and reversal. On the present trial counsel for the State made an objection to a question asked by relator, of counsel for the defense, who thereupon stated that the identical matter had been passed on by the Court of Criminal Appeals in their opinion reversing the case and that it held proper the question asked. The judgment later entered by the court below sets out the proceedings then had and from which we quote:

"To which said objection the court made the following ruling, to-wit:

'I think the Court of Criminal Appeals was very incorrect, but we will have to bow to their ruling.'

Whereupon the following proceedings were had:

Mr. Crenshaw: 'If the Court please, we except to that remark of the court in the presence of the jury.'

The Court: 'I will give you a bill and instruct the jury not to consider the remark of the Court or counsel as to what the Court of Criminal Appeals did in this case. The remark made by the Court was directed by the Court to counsel and was not for your considera-

tion. I don't care for counsel again to make any reference to what the Court of Criminal Appeals' holdings were. If you do I will hold you in contempt of Court.'

Mr. Crenshaw: 'I want to take a bill of exceptions'—The Court: 'Be seated.'

Mr. Crenshaw: 'I would like to take a bill.' The Court: 'Mr. Crenshaw, if you don't sit down I will send you to jail. . . . Mr. Sheriff, take this gentleman to jail.'

'If you can't respect this Court you can't practice before it.'

Mr. Crenshaw: 'I am trying in a very respectful manner . . . .

The Court: Mr. Crenshaw, I will fine you if you speak to the Court. The Court has asked you kindly to be seated.'

Mr. Crenshaw: 'Can I take a bill of exceptions?'

The Court: 'You can when you come back from jail.'

Mr. Crenshaw: 'I want a commitment written up.'

The Court: ''All right, hold him until the commitment is written. Mr. Sheriff.' ''

In the judgment also appears further colloquy between the learned trial judge and relator in which the latter was given an opportunity to apologize, but declined to do so upon the ground that he was only doing his duty to his client and attempting to take a bill of exceptions. It appears there was nothing in the tone, manner or words of relator deemed contemptuous by the court below. We are thus called on to say whether an attorney engaged in the trial of a case, when on his feet making objection in tone, manner and word respectful, may be legally ordered by the court to take his seat and for refusal be adjudged in contempt.

We observe from the rules laid down by the Supreme Court for the conduct of cases in District and County courts, in Vol. 142, S. W. Rep., that rule 42 thereof requires that in addressing the judge any attorney shall rise to his feet, and it would naturally follow that during the course of any remarks to the court counsel should remain standing. It is well settled that in order to bring any proceeding in the trial court before the appellate court for review there must be an exception and when this is aimed at some act or remark of the court during the reception of evidence, the fact of objection must be then made known to the court and preserved by a bill of exceptions, else it would in most cases be held waived. We can not quite see how relator could protect the interests of his client in a proper manner, or attempt to do so, though his complaint be not well founded, without rising and in respectful manner, tone and language making known the fact of his objection and the grounds thereof. When this is done it calls for a ruling at the hands of the court. If in connection with said ruling there be words or acts on the part of the trial court which to the mind of counsel for the defense appear cap-

able of injury to the rights of his client, he has the same right to again rise, address the court and state his objection and the grounds thereof. In this case, as appears from the above quotation from the judgment, a question was asked by relator, and in reply to an objection made by opposing counsel the pertinence of the question was affirmed by stating that the appellate court had held it a correct inquiry. In the hearing of the jury apparently, the learned trial judge made a statement of his adverse opinion as to the correctness of the ruling of the appellate court. This statement of the trial court evidently was deemed by relator as capable of having a harmful effect upon the jury's attitude toward the matter involved in the question which he had asked. The weight given to remarks of the trial court by juries has often been the subject of discussion by this court and attention directed to Article 787 of our C. C. P., which forbids any remark of the trial judge calculated to convey to the jury his opinion of the case or any part thereof. Whether relator was right or wrong in his conclusion as to the effect of the remark of the court below, would not in any way affect his right to object to the remarks for reasons respectfully then stated for the purpose of his bill of exceptions; and such bill might then be taken if counsel so desired. If we understand the events recorded in the judgment, relator while standing said he wished to except to the remarks of the court in the presence of the jury. The court said he would give him a bill, and in connection with said statement made other remarks. Relator, apparently still standing, began to say that he wanted to take a bill of exceptions but before he had finished his statement he was interrupted by the learned trial judge and told to be seated. Whereupon counsel again informed the court, still apparently standing, that he would like to take a bill of exceptions, and the court repied that if he did not sit down he would send him to jail. We conclude from the asterisks in the record at this point, that after waiting a moment and nothing occurring, the court directed the sheriff to take the relator to jail. Relator began again to say that he was trying in a respectful manner,—whereupon the court again interrupted and said if counsel spoke to him he would fine him. Thereupon the court directed the clerk to enter a fine of twenty-five dollars against relator and that he be committed to jail for three days or until he purged himself of contempt, and the commitment in the record sets out that the relator was found guilty of the offense of contempt by the court and fined twenty-five dollars and committed to jail for a period of three days, or until he had purged himself of said contempt.

We have examined many cases and text writers, recognizing that the power to punish for contempt is necessary to the existence of courts and the orderly conduct of business before them, and that in proper cases the summary exercise of such power is just and right;

recognizing also that in all cases such exercise must be compatible with civil liberty and be used as an auxillary to the pure ends of justice. Nor are we unmindful of that care which characterizes this court in solving a question touching the propriety of the decisions of the presiding judge of a trial court in passing on the conduct of an officer of that court. We find ourselves unable to lose sight of the probable motives involved,—that of the judge to maintain exact order,—that of relator to protect the rights of his client. At this point we deem it not inappropriate to quote what was said by us in Ex Parte Duncan, 42 Texas Crim. Rep., 661, 62 S. W. Rep., 762:

"We wish to say that the power of the court is official,—judicial, and not personal,—and the relations of court and attorney are correlative. Courts may, will, and should enforce judicial power and functions when necessary; yet this must be donu in a manner sanctioned by law, and in consonance with judicial dignity, and with due regard to the rights of parties to be affected. Attorneys are bound and will be held to obey legal orders of courts, yet the court should invoke its judicial authority under the law and in obedience thereto. The relationship of court and attorneys, bench and bar, are reciprocal, and each, in their proper sphere, is clothed with powers, rights, and privileges, which are to be recognized and respected by the other. These relations should be recognized and respected alike by the bench and bar, and, being carefully kept in view and followed as rules of action and conduct, will avoid friction."

And in Ex Parte Miller, 92 Texas Crim. Rep., 489, 244 S. W. Rep. 614:

"It is true that the dignity of the courts is to be upheld and decorous conduct and language greatly become the advocate at the bar, but the right of free speech and of full representation by counsel guaranteed to one accused of crime is of serious weight, and much caution should be exercised in any case that these rights be not infringed or denied by reason of the fact that the person under discussion or criticism is the learned trial judge, and the thing legitimately under fire is his action. The courts are but human. We appreciate keenly the attitude of the trial judge, for the judgments of appellate courts are often vigorously and correctly assailed, but the great end of court procedure is justice, in the seeking of which no personal feeling, passion, prejudice, or mere proprieties should be allowed to operate as a bar."

Relator was engaged in the defense of his client, and it seems without dispute that in the execution of what must be regarded by every attorney as his sworn duty, he wished to state his exceptions to language used by the court in remarks accompanying his ruling. As substantially stated above, the language of the court may or may not have been exceptionable,—we are not concerned with this question,—

but the fact remains that the right to except to such remarks was inviolable. What was relator to do? If he addressed the court,— and his statement of his exception must of necessity be so addressed,— he was required by the rules laid down by the Supreme Court to stand. If he sat down he could not address the court and state his exception. If he did not state his exeception same would be waived and relator's duty to his client would not be discharged. He stated to. the court that he was trying in a respectful manner to take a bill and was told by the court that if he spoke to him he would fine him. Relator thereupon spoke to the court and asked if he could take a bill of exceptions, and the court informed him that he could when he came back from jail. Between the Scylla of what might be deemed his respectful duty to the court, and the Charybdis of his undoubted duty to his client, relator became involved and asks us to help him out.

It does not appear to us that one who in respectful tone, manner and language is engaged in an attempt to state an exception to the court before whom he is trying a case, is guilty of contempt for declining to take his seat at the command of the court before he states his exception. We would not be understood as holding that contempt might not arise from the statement of continuous frivolous objéctions amounting to an obstruction of the orderly progress of a trial, or that after having accomplished that which is deemed duteous, viz: the statement of his exception,—counsel remain standing after a request to be seated, in a manner such as to affront the court, that these might not be contemptuous, but we do not think relator's conduct to fall in either class.

Concluding under the facts that what was deemed contemptuous by the learned trial judge was not so in fact or intent, we must hold the judgment one which he had no power to enter, and therefore direct the discharge of the relator, and it is so ordered.

*Relator discharged.*