## J. C. Thompson v. The State.

No. 8723. Delivered June 24, 1925.

Rehearing denied June 23, 1926.

**1.—Murder—Evidence—Cross-Examination—Properly Excluded.**

Where, on a trial for murder, a state witness on cross-examination having admitted that he was not present or gave testimony on a former trial, there was no error in sustaining the objection of the state to the

further question, if witness knew, at the time that the case was on trial, that it was being so tried. The fact alone that one knew something about a case, and he was not called to testify, would not affect his credibility when called at a later trial. Distinguishing Rice v. State, 103 S. W. 1157, and Dina v. State, 46 Tex. Crim. Rep. 402.

### 2.—Same—Remarks by Court—No Injury Shown.

Where, during a controversy between counsel for the state and defendant over the admissibility of testimony, as to appellant's insanity, the court remarked, in referring to a former opinion of the court, in the same case: "I think the Court of Criminal Appeals was very incorrect, but we will have to bow to their ruling," and afterward, in his charge to the jury instructed them not to consider his remark, and further told them that declarations of the Court of Criminal Appeals constituted the supreme and correct law of the land, no harmful error is presented. Distinguishing Gribble v. State, 85 Tex. Crim. Rep. 52; Wallace v. State, 44 Tex. Crim. Rep. 300; Davis v. State, 143 S. W. 1161 and Deason v. State, 67 S. W. 97.

### 3.—Same—Continued.

What we have just said applies in a large measure to the complaint of appellant that the trial judge told defendant's attorney that he would fine him for contempt if he made further reference to what the Court of Criminal Appeals had held, brought out by counsel's insistence in discussing the opinion of this court on the former appeal, in passing upon the testimony of another witness on the insanity issue. We are not inclined to believe that the remarks of the judge could be held by us to have prevented appellant's counsel from properly discussing or referring to the opinions of this court. In any event the court's charge withdrawing the remark from the consideration of the jury would seem to obviate any possible evil effect.

### 4.—Same—Punishing for Contempt—Though Unwarranted, Not Reversible Error.

Where the trial court ordered counsel for appellant, who was insisting on his objections, and arguing with the court, to take his seat, and upon his refusal to do so he was fined for contempt, while the court's action may have been unwarranted, we cannot bring ourselves to believe that the error of the court in the matter, as presented in this case, was such as to require a reversal. Distinguishing Robertson v. State, 38 Texas 187; House v. State, 57 S. W. 825; Echols v. State, 170 S. W. 786; Walters v. State, 192 S. W. 778; State v. Davis (Mo.) 225 S. W. 707, and Warren v. State, 259 S. W. 575.

### 5.—Same—Bill of Exception—As Qualified—No Error Shown.

Where appellant complains, in a bill of exception, of the refusal of the court below to permit the witness to answer certain questions, and the court's qualification to the bill states that nothing was told the court as to what testimony was expected from this witness, appellant having accepted the qualifications to his bill, no error is presented.

### 6.—Same—Evidence—On Insanity—No Error Shown.

Where a witness for the appellant had stated facts upon which his opinion was based, that he thought appellant was crazy, and wanted

to get away from him, there was no error in refusing to allow the witness to state his opinion in so many words that appellant was insane. In ordinary language we speak of insane people as crazy, and vice versa.

### 7.—Same—Continued.

Nor was there any material error in permitting the state, on cross-examination of this witness, to ask him if he had ever filed a complaint against appellant for being crazy.

### 8.—Same—Bill of Exception—To Admission of Evidence—No Error Shown.

Where appellant objected to the introduction of a certain letter offered by the state, which was signed by appellant and his wife and addressed to the deceased, on the ground that it was immaterial and irrelevant, no error is shown as far as we can tell from the bill. It may have been offered as a circumstance shedding light on appellant's mental condition.

### 9.—Same—Evidence—On Insanity—Properly Received.

Where appellant had raised the issue, on his trial of insanity, there was no error in laying the predicate, in rebuttal by the state, to permit the sheriff and deputy sheriffs to testify in regard to appellant's connection with the kangaroo court which had been carried on in jail, and of which the appellant was the judge, nor was it error to permit a witness for the state who gave it as his opinion that appellant was sane, to testify as to what occurred between himself and appellant prior to the homicide, when he went to appellant's house to arrest him.

### 10.—Same—Argument of Counsel—No Error Shown.

Where counsel for the state, in his argument to the jury, appellant having defended on the ground of insanity, among other things said: "How are you going to get him in the asylum," of which complaint is made, does not seem to us to contain any matter necessarily injurious to the rights of the accused. Distinguishing Weige v. State, 81 Tex. Crim. Rep. 479.

### 11.—Same—Continued.

Complaints of arguments must always be appraised in the light of the facts in a particular case. A statement which might call for a reversal in one case might not be so regarded in another, on different facts. To demand a reversal, under the particular facts the argument must not only be improper, but must be calculated to injure the rights of accused, and this injury must be such that an instruction to the jury not to consider the argument would appear ineffectual in the accomplishment of that object. See Todd v. State, 93 Tex. Crim. Rep. 553. Also see Branch's Ann. P. C., page 204.

ON REHEARING.

### 12.—Same—Argument of Counsel—On Insanity Issue—Not Reversible Error.

It is the well established rule that where improper argument is resorted to, but is withdrawn, or the court instructs the jury not to consider same, ordinarily the injury has been cured, and it will not be

held reversible error, unless it appears legally impossible that the injurious effects of the argument could have been removed by the withdrawal or instruction. The argument of private prosecutor in the instant case, in discussing the insanity issue and which on objection was withdrawn from the jury, does not present a reversible error, and the motion for rehearing is overruled.

Appeal from the District Court of Hill County. Tried below before the Hon. Horton B. Porter, Judge.

Appeal from a conviction of murder, penalty twenty years in the penitentiary.

This is the second appeal·in this case. See 256 S. W. 279. The facts are sufficiently stated in the former opinion.

*James P. Cogsdell, Collins, Dupree & Crenshaw* of Hillsboro, for appellant.

*Sam D. Stinson*, State's Attorney, and *Robert M. Lyles*, Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Hill County of murder, and his punishment fixed at twenty years in the penitentiary.

This is the second appeal in this case. See 256 S. W. Rep. 279. The facts are sufficiently stated in the former opinion.

On this trial a witness for the state admitted on cross-examination that he had not been present or given testimony at the former trial. Defense counsel asked him if he knew, at the time the case was on trial, that it was so being tried. The state objected that this was not material. To the court's action in sustaining such objection exception was reserved. No error appears. No suggestion is made that the witness at any time concealed from proper inquiry the facts known to him, as appears in the Rice case, 103 S. W. 1157—or that facts had arisen since the former trial which might reflect unfavorably upon his failure to appear and give testimony, as was the case in Dina v. State, 46 Tex. Crim. Rep. 402, which cases are cited in appellant's brief. The fact alone that one knew something about a case, and that he was not called to testify, would not affect his credibility when called at a later trial.

Mrs. Hattie Baldwin, widow of deceased and sister of appellant, was a defense witness on the question of insanity. It is shown that she testified to many incidents upon which she based her conclusion that appellant was insane at the time of

the homicide. On cross-examination she was asked relative to each incident so named by her, and admitted that she had seen sane people do these things. On redirect examination she said that she did not predicate her opinion that appellant was insane on any single incident, but on all of them. Defense counsel then asked her as follows:

"Q. I will get you to state what the facts are with reference to whether or not your opinion, in part at least, is based upon June's manner and demeanor and conduct at the time these various things happened, or whether it is based alone on the instances which you have detailed," to which she replied: "I think it is based on those things—that special one as well as any other." At this point state's counsel said:

"It is improper for counsel to suggest to witness pertinent predicates for an opinion on insanity. The proper way is to ask the witness to detail everything they have in mind."

Whereupon defense counsel made the following statement:

"That is the very question which Mr. Frazier raised before, and the very question which was passed on by the Court of Criminal Appeals in sustaining the assignment as to Mrs. Winn's testimony. They held Mr. Frazier was incorrect about it."

In reference thereto the learned trial court made this remark: "I think the Court of Criminal Appeals was very incorrect, but we will have to bow to their ruling." Exception was taken to this remark of the court, and Art. 787 of our C. C. P. Gribble v. State, 85 Tex. Crim. Rep. 52; Wallace v. State, 44 Tex. Crim. Rep. 300; Davis v. State, 143 S. W. Rep. 1161, and Deason v. State, 67 S. W. Rep. 97, are cited as supporting appellant's contention. We think none of them do in fact support it. If the remark of the court related to any testimony, it was that given by Mrs. Winn at a former trial, and it is not shown by said bill of exceptions that at any time during this trial Mrs. Winn gave testimony to which such remark could have application. This court does not permit its decisions to be affected by remarks, however uncalled for, which may be made regarding its opinions in connection with trials in the lower court, unless such remarks be made at such time and in such manner as that the rights of the defendant on trial are, or may have been affected thereby. All the cases cited show comments of the court upon questions of fact or law pertinent to the testimony on issues material to the case then on trial. We do not think this the effect of the remark

made by the court here objected to. We also note that in charging the jury the court below instructed them not to consider his remark, and further told them that declarations of the Court of Criminal Appeals constituted the supreme and correct law of this state in criminal cases.

What we have just said applies in large measure to bill of exceptions No. 4 wherein is set out the fact that the learned trial judge told defendant's attorney that he would fine him for contempt if he made further reference to what the Court of Criminal Appeals had held. We learn from the bill, which sets out the same matters as the bill just discussed, that a question had been asked and answered, and that after such answer had been given a statement was made by state's counsel in the nature of an objection, to which appellant's counsel replied by reference to what the Court of Criminal Appeals had said in regard to this upon a former appeal of this case, asserting that the same question asked and answered by the witness was held admissible by the appellate court on the former appeal in reference to another witness than the one now on the stand. There was nothing before the court. No motion had been made to have the testimony given by the witness withdrawn. The making of an objection to an answer already given amounts to nothing. There was no occasion for the discussion of the remarks of the trial court with reference to the Court of Criminal Appeals. Appellant's counsel was not discussing the holding of the Court of Criminal Appeals with reference to any matter of offered testimony, for the witness had already answered the question. We are not inclined to believe the remark of the judge could be held by us under the circumstances to have prevented appellant's counsel from properly discussing or referring to the opinions of this court. As the matter is presented, our only concern is whether the acts and ruling of the court could or might have been reasonably calculated to cause injury to the rights of appellant. We do not think so. We might further remark that the supposed difference between defense counsel and the court was not over a matter from which the jury could have believed or imputed any reflection upon the character, integrity or honor of said counsel. His standing as an attorney was not thereby attacked or affected. The argument was about a point of practice not really material at the time, and it is not impossible that the zeal of appellant's counsel in contending for his position to the extent of eliciting in the pres-

ence of the jury a threat from the court to place him in jail for contempt—might have favorably impressed the jury. In any event the special charge given instructing the jury not to pay any attention to what the court may have said to counsel, and withdrawing the remark, and further telling them what was said by the Court of Criminal Appeals was the supreme and correct law in criminal cases, would seem to obviate any possible evil effect.

Bill No. 5 recites the same matters as are set out in the two preceding bills, and further that defense counsel, persisting in the taking of bills of exception after being directed to take his seat by the court, was fined $25.00 and the sheriff directed to take counsel to jail, it appearing that the judgment and order of the court were entered out of the presence of the jury. Our views in regard to the legality of the judgment of contempt appear in Ex Parte Crenshaw, 259 S. W. Rep. 587, and in line with what we there said we further refer to 2d. Bishop on Crim. Law, 9th Ed., Sec. 252, wherein are found statements to the effect that no person should be molested by the judge for doing respectfully anything in the presence of the trial court which he has a right to do, and that the mere fact that an attorney for a party before the court persists in addressing the court while a witness is being examined, though admonished to desist, does not constitute contempt. The pith of the exception under discussion at this time is that ordering appellant's counsel to jail for contempt under the circumstances constituted such improper censure and disparagment of said attorney by the trial court as should vitiate the verdict in this case. The proposition is not free from trouble, and the authorities found are not very satisfactory. Appellant cites Robertson v. State, 38 Texas, 187; House v. State, 57 S. W. Rep. 825; Echols v. State, 170 S. W. Rep. 786; Walters v. State, 192 S. W. Rep. 778; State v. Davis, (Mo.) 225 S. W. Rep. 707, and Warren v. State, 259 S. W. Rep. 575. We can not bring ourselves in agreement with the opinion of Judge Ogden in the case first named wherein the court's opinion seems to proceed on the theory that to reverse the case would be the proper way to punish the trial court for his wrongful acts. For contempt committed during that trial appellant's counsel were imprisoned after the trial was over and after they had filed motion for new trial. They were brought from jail and ordered by the court to argue said motion for new trial. They took an exception, but whether to being brought

out to argue the motion, or being required to argue it, or because they were not given time or opportunity to prepare to argue it—does not appear. It seems to us that the only real question involved was—were the rights of the accused in the case affected by the court's conduct, which question does not appear to have been considered at all in rendering the opinion. The House case, supra, was reversed for the acts of the court in denying to the jury the right to examine demonstrative evidence, and the opinion sheds no light on the issues here. In Echols case, supra, it appears that appellant's counsel had persisted in ignoring the rulings of the court and that the court lost his temper and made hasty remarks such as often follow when that is the case, but the matter was held not sufficient ground for reversal. In Walters' case, supra, what was said by the trial court was deemed a reflection on the credibility of a witness to such an extent as was deemed a violation of the forbiddance of Art. 787 C. C. P. In the Davis case, supra, the language of the court to appellant's counsel was held to impute to him a purposeful delay of the trial by resorting to improper methods and was deemed sufficient to affect his integrity as an attorney. In Warren's case, supra, the court used language held to be a comment on the weight of the evidence. These do not appear to us analogous cases to the one now before us. We also note that in Dallas, etc., Ry. Co. v. McAllister, 90 S. W. Rep. 933, the manner and tone of the court in reprimanding counsel coupled with what he said, were held to constitute such reflection on counsel as to prejudice his case with the jury. The statement of the court was held to put before the jury the fact that counsel had violated an agreement made in open court. Nothing in the bill under discussion shows that the manner or tone of the court's statement was not courteous. After the colloquy as to the opinion of the Court of Criminal Appeals, the court directed defense counsel to take his seat and upon his refusing, ordered him to jail. Defense counsel continued to address the court and was told again not to speak to the court under penalty of fine. The court further said in that connection that he had asked counsel kindly to be seated. We have carefully sifted and analyzed this matter as best we can and are unable to find anything that reflects upon the honor, integrity, character or standing of appellant's counsel. He was merely insisting on his right to state his exception and the court was insisting that counsel could have his bill but that he must be

seated, and upon counsel declining to be seated and insisting on making statements to the court, the court announced that he would punish counsel for contempt. In this matter, in the Crenshaw case, supra, we indicated in our opinion that counsel for appellant was legally in the right. We can not, however, bring ourselves to believe that the error of the court in the matter was such as to require a reversal of this case. It appears that at the point indicated in the proceedings the court below recessed, and when the case was taken up again the next morning counsel, who had been fined, was present and proceeded during the remainder of the trial. It can not be said that appellant was deprived of the presence and assistance of said counsel, and there was nothing in the application for a continuance which was presented to the court immediately after he adjudged said counsel guilty of contempt.

Appellant's bill of exceptions No. 7 fails to show a refusal of the court below to let the witness answer certain questions therein set out, but on the contrary presents plain direction to the witness to detail those things on which she based her conclusion that appellant was insane. A qualification to the bill further states that nothing was told the court as to what testimony was expected from this witness in answer to such questions.

We do not think the action of the court below, in holding that a witness who had detailed what occurred between him and appellant, and who further stated in that connection that from what was said and done he thought appellant to be crazy and wanted to get away from him—was materially erroneous in declining to allow the witness to state his opinion in so many words that appellant was insane. In ordinary language we speak of insane people as crazy and vice versa, and we are of opinion that the statement of the witness that he thought appellant to be crazy sufficiently set forth his belief that in his opinion he was insane.

Bill of exceptions No. 12 sets forth that the witness last referred to having testified that he thought appellant crazy, was asked and required to answer on cross-examination that he had never filed any complaint against appellant for being crazy. We do not regard the objection made to this as of any materiality.

In bill of exceptions No. 13 appears the objection to a certain letter offered by the state in rebuttal, the objection being that it was immaterial and irrelevant, and because it was

written prior to a written contract already in evidence, it being asserted that the letter was merged into the contract. The letter was signed by appellant and his wife and addressed to the deceased, and as far as we can tell from the bill may have been offered as a circumstance shedding light on appellant's mental condition.

The testimony of the sheriff and deputy sheriffs with regard to appellant's connection with the kangaroo court which had been carried on in the jail and of which he was the judge, might be admissible as forming the basis for the opinion of said witnesses on the question of appellant's insanity. The bills are qualified with the statement that they formed part of the predicate for the admission of the testimony of said witness along this line. Nor do we deem it objectionable that a witness for the state who gave it as his opinion that appellant was sane, was allowed to testify to what occurred between him and appellant on an occasion prior to the homicide when he went to appellant's house to arrest him and had a struggle with him over a pistol.

There are three bills of exception to the argument of state's counsel. Bill No. 23 sets out at some length an argument which was not excepted to in full but an exception was taken to a statement contained in said argument, which is as follows: "How are you going to get him in the asylum?" it being contended that this constituted an attempt to influence the jury to return a verdict against their conviction in regard to the question of insanity, on the theory that if the jury turned him loose, no other jury could get him in the asylum. We do not think this particular statement subject to the objection thus made, and the question, "How are you going to get him in the asylum," which is stated by counsel for appellant to be only part of the argument set out, of which complaint is made, does not seem to us to contain any matter necessarily injurious to the rights of the accused.

The argument complained of in Bill No. 21 is much like that appearing in the Weige case, 81 Tex. Crim. Rep. 479, though not quite as objectionable. The Weige case was reversed for several errors. The trial court in that case refused to instruct the jury not to consider the argument deemed objectionable, and, as stated in the opinion, the evidence supporting the insanity theory being strong, the argument was said by us to be open to the complaint directed thereat. In the case now before us we do not so regard the evidence of insanity,

and also we observe that the court in this case, viewing the matter differently from what the court below did in Weige's case, supra, instructed the jury promptly not·to consider the argument, and in such case it is deemed unlikely by us that the argument was harmful. Complaints of arguments must always be appraised in the light of the facts in a particular case. A statement which might call for reversal in one case, might not be so regarded in another on different facts. To demand a reversal, the argument must not only be improper but such as, under the particular facts, was calculated to injure the rights of the accused, and this injury must be such as that an instruction to the jury not to consider the argument, would appear ineffectual in the accomplishment of that object. Todd v. State, 93 Tex. Crim. Rep. 553, and authorities cited. The instant case is readily distinguishable from the Weige case, supra, in the matter of the cogency of the evidence supporting the issue of insanity, and also because of the prompt action of the trial court in suppressing the argument and instructing the jury not to consider it, in view of which distinguishing characteristics we think ourselves not called on to reverse because of anything said in the Weige case. What we have just said about the matter complained of in bill of exceptions No. 21 applies equally to a similar argument complained of in bill No. 22, wherein it appears that the court also sustained the objection and instructed the jury not to consider the argument. Mr. Branch on page 204 of his Annotated P. C. cites many authorities supporting the proposition that unless the remarks of state's counsel are obviously of a nature to impair the rights of defendant or to improperly prejudice his case before the jury, such remarks, though improper, will not be considered sufficient for reversal unless a charge instructing the jury to disregard them was asked and refused, and an exception reserved.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The only matter raised in appellant's motion for rehearing which has given us concern is our decision with reference to the argument of the private prosecutor complained of in bills of exception Nos. 21 and 22. If it be conceded that said argument was erroneous, it must be

borne in mind that the trial court instructed the jury not to consider same; also that the purpose of said argument was to induce the jury not to acquit on the ground of insanity. Examination of the record reveals the fact that the testimony in support of the theory of insanity appears to fall far short of that cogency which seem to call for a judgment favorable to such issue. Some twenty witnesses who had known appellant many years, and some of them all of his life, testified to his sanity. He was a married man and appears to have transacted business in usual ways during, if not all, his life. On the other hand, three of the appellant's sisters testified that he was not of sound mind; also three other witnesses, the latter basing their opinions on apparently slight facts. Also a doctor who had sat on a jury composed of six doctors at a time when appellant was charged with another offense, and when there was no opposition to having him declared insane, testified that in his opinion appellant was insane.

We do not trench on the jury's province to pass on fact issues but are citing these matters as pertinent to the well established rule that where improper argument is resorted to but is withdrawn, or the court instructs the jury not to consider same, ordinarily the injury has been cured, and it will only be held reversible error by this court when, under the circumstances of the case, it does not appear legally possible that the injurious effect of the argument referred to could have been removed by the withdrawal or instruction. The burden is on one charged with crime to satisfy the jury by a preponderance of the testimony that he is insane, if such be the defense, and when the testimony in support of that theory appears such as to make it altogether unlikely that the jury would have accepted such a plea, we feel justified in taking into consideration such fact in determining whether in spite of the court's instruction, the argument complained of brought about a verdict different from that which otherwise would have resulted. We are not able to conclude under the facts of this case that the error of said argument was so serious as that it could not be cured by its withdrawal.

The motion for rehearing will be overruled.

*Overruled.*

MORROW, PRESIDING JUDGE.—I do not concur in the disposition of bills of exception 21 and 22, but do not care to write in the case.